## CIRCUIT COURT OF THE CITY OF NORFOLK

Darryl White

v.

Shawn L. Wideman et al.

October 9, 1997

Case No. (Law) L97-1333

BY JUDGE EVERETT A. MARTIN, JR.

The plaintiff has filed a motion for judgment arising out of an automobile accident that occurred on October 3, 1995, at which time he was a convicted felon in the custody of the Virginia Department of Corrections. He alleges he was injured when the Department of Corrections bus in which he was a passenger collided with the car Shawn L. Wideman was driving. He alleges both the bus driver and Wideman, an uninsured motorist, were negligent.

The plaintiff has served the Commonwealth of Virginia in two capacities: first, for the alleged negligence of the Department of Corrections and, second, as Wideman's uninsured motorist carrier. The Commonwealth has filed a motion to quash service on it in the latter capacity on the ground that no such coverage exists under Code of Virginia § 2.1-526.6. The plaintiff has not objected to this procedure. Thus, I assume without deciding, that a motion to quash is the proper method of bringing the issue before the court. The motion to quash will be sustained.

Section 2.1-526.6 states in pertinent part:

A. Subject to the approval of the Governor, the Department of General Services through its Division of Risk Management shall establish an insurance plan, which may be purchased insurance, self-insurance, or a combination of self-insurance and purchased insurance:

1. To provide protection for the Commonwealth, its officers, and employees and other authorized persons against tort liability ...

arising out of the ownership, maintenance, or use of motor vehicles owned or leased by the Commonwealth or used by state employees or other authorized persons in the course of their employment. ...

C. Any insurance plan for state motor vehicles established pursuant to this section shall provide (i) protection against the uninsured motorist at limits not less than those provided in § 46.2-100. ...

Pursuant to this statute, the Commonwealth established a risk management plan (the "plan"), which the Department of General Services and the Governor approved. The plan provides these coverages:

> C. The plan will pay all sums, except as herein limited, which the Commonwealth of Virginia, its departments, agencies, institutions, boards, commissions, officers, agents, or employees ... shall become obligated to pay by reason of liability imposed by law for damages resulting from any claim arising out of any acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization. ...
>
> F. Coverage also applies to liability for uninsured and underinsured motorist exposures.

The plaintiff argues that the court should read all the requirements of Code of Virginia § 38.2-2206 into § 2.1-526.6 and the plan and that it may do so by construing the Commonwealth, its officers, and employees as "name insureds" for uninsured motorist coverage under the plan. Thus, argues the plaintiff, he is an "insured" under § 38.2-2206(B) because he was injured while a guest in a state vehicle. The Commonwealth claims that coverage under the plan does not extend to guests but is limited under § 2.1-526.6 to the Commonwealth, its officers, employees, and other authorized persons.

The Supreme Court of Virginia has ruled that there are two classes of insureds for uninsured motorist coverage. The first class includes the named insured and, while residents of the same household, the spouse of the named insured and certain relatives of either. These persons have coverage "while in a motor vehicle or otherwise." The second class includes permissive users of and guests in the motor vehicle to which the policy applies. See *Insurance Co. of North Am. v. Perry, Adm'r.*, 204 Va. 833, 134 S.E.2d 418 (1964); *Cunningham, Adm'x. v. Insurance Co. of North Am.*, 213 Va. 72, 189 S.E.2d 832 (1972); *Stone v. Liberty Mutual Ins. Co.*, 253 Va. 12, 478 S.E.2d 883 (1997).

The first two of these cases, upon which the plaintiff relies, show the error of his argument. If all employees of the Commonwealth were named insureds under the plan and if the plan provides the same coverage as is required by § 38.2-2206, then the resident spouses and relatives of the employees of the Commonwealth would be insureds of the first class. The plan would then provide uninsured motorist coverage, for example, to the resident husband of an employee of the Commonwealth injured by an uninsured motorist while a passenger in a friend's car on a fishing trip. It would also provide coverage to a resident child of an employee of the Commonwealth injured by an uninsured motorist while a pedestrian. See *Stern v. Cincinnati Ins. Co.*, 252 Va. 307, 477 S.E.2d 517 (1996). Given the stated purposes of § 2.1-526.6, the General Assembly cannot have intended these results. In construing a statute, the courts presume the General Assembly did not intend the application of the statute to lead to irrational consequences. *State Farm Mut. Auto. Ins. v. Weisman*, 247 Va. 199, 441 S.E.2d 16 (1994).

The Commonwealth of Virginia is not an insurance company. Nothing prohibits the General Assembly from authorizing a more limited uninsured motorist coverage for vehicles the Commonwealth owns, leases, or uses than it may require for policies sold by commercial insurance companies to the general public.

The plaintiff claims the Commonwealth's construction of § 2.1-526.6 causes certain problems. He notes that § 2.1-526.6 does not define "uninsured motor vehicle." However, the term "uninsured motor vehicle" has acquired a well known legal meaning. Its definition in § 38.2-2206(B) has been largely unchanged since uninsured motorist coverage was first required by 1958 Acts of Assembly, c. 282. Thus, courts may look to that definition in interpreting § 2.1-526.6 and the plan. Courts typically will look to one statute for the meaning of an undefined term in another if the statutes cover related subject matter. To read one statute in toto into another statute is a different matter altogether.

Most of the problems the plaintiff claims would arise from the Commonwealth's interpretation of § 2.1-526.6 will be resolved if an employee of the Commonwealth also has private uninsured motorist coverage. Whether an employee of the Commonwealth without private uninsured motorist coverage could bring a "John Doe" action is an issue I need not decide. However, even if such an action is not available in that circumstance, it is a small problem compared to the great mischief the plaintiff's construction of the statute would create.

The Commonwealth correctly notes that the General Assembly has specifically required those obtaining a certificate of self-insurance to provide

uninsured motorist coverage to the extent required by § 38.2-2206. See Code of Virginia § 46.2-368. This provision was enacted by 1972 Acts of Assembly, c. 463. This indicates the General Assembly did not intend that such coverage be required under the plan.

"Guests" have been insureds under Virginia's uninsured motorist statute since its enactment in 1958. The predecessor statute to § 2.1-526.6 that first required uninsured motorist coverage was enacted by 1979 Acts of Assembly, c. 231. Both statutes have been amended on many occasions. Had the General Assembly intended to provide uninsured motorist coverage on state motor vehicles to the extent required by § 38.2-2206, it has had ample opportunity to do so. It has not.